

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-17,434-02

## EX PARTE CLARENCE CURTIS JORDAN, Applicant

## ON POST-CONVICTION APPLICATION FOR WRIT OF HABEAS CORPUS FROM CAUSE NO. 276428-B IN THE 184ᵀᴴ DISTRICT COURT HARRIS COUNTY

*Per curiam.*

## O P I N I O N

Before the Court is Applicant Clarence Curtis Jordan's application for a writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.071.[1] In his primary claim (Claim One), Applicant invokes *Penry v. Lynaugh*, 492 U.S. 302 (1989), arguing that he is entitled to a new punishment trial due to inadequate jury instructions

---

[1] Unless otherwise specified, all references to articles refer to the Texas Code of Criminal Procedure.

given at his 1983 trial. In an alternative claim (Claim Two), relying on *Atkins v. Virginia*, 536 U.S. 304 (2002), Applicant alleges that he is intellectually disabled and therefore categorically immune from execution.

For the reasons discussed below, we conclude that no additional fact finding is needed regarding Claim One. Applicant is entitled to habeas relief on his *Penry* claim and we accordingly remand his case to the trial court for a new punishment trial. We further conclude that Applicant has waived his *Atkins* claim for purposes of this proceeding and dismiss it.

I.     BACKGROUND

In 1978, Applicant was convicted of capital murder and sentenced to death for intentionally shooting to death Joe Williams while robbing or attempting to rob Williams and other employees of a Houston food market. *See* TEX. PENAL CODE § 19.03. On direct appeal, this Court vacated the conviction and sentence and remanded the matter for a new trial due to the erroneous denial of a challenge for cause. *Jordan v. State*, 635 S.W.2d 522 (Tex. Crim. App. 1982).

The State retried Applicant in 1983 and again sought the death penalty. The new jury also convicted Applicant of capital murder. At the punishment phase, among other things, Applicant presented evidence that he suffered from paranoid

schizophrenia and possibly Organic Brain Syndrome with delusions (a condition involving organic brain damage). After the close of evidence, the trial court submitted the following special issues to the jury:

> i.     Special Issue 1: Do you find from the evidence beyond a reasonable doubt that the conduct of the Defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

> ii.    Special Issue 2: Do you find from the evidence beyond a reasonable doubt that there is a probability the Defendant would commit criminal acts of violence that would constitute a continuing threat to society?

Based on the jury's answers to the "deliberateness" and "future dangerousness" special issues, the trial court sentenced Applicant to death. We affirmed the conviction and sentence. *Jordan v. State*, 707 S.W.2d 641 (Tex. Crim. App. 1986).

Applicant's execution was scheduled for August 1987. Applicant filed a habeas application, pursuant to Article 11.07, in June 1987. Applicant asserted one claim: he was incompetent to be executed under the Supreme Court's then-recent opinion in *Ford v. Wainwright*, 477 U.S. 399 (1986). We deemed Applicant incompetent under *Ford* to be executed and stayed Applicant's execution until such time that he regained competency. *See Ex parte Jordan*, 758 S.W. 250, 255

(1988). Over the past thirty-five-plus years, Applicant has apparently remained incompetent to be executed.

## II.     THE PRESENT APPLICATION

In October 2025, Applicant filed in the trial court the habeas application that is now before this Court. In Claim One, relying on *Penry* and its progeny, Applicant alleges that he "was deprived of his right to have a jury consider all mitigating evidence before sentencing him to death in violation of the Eighth Amendment of the U.S. Constitution." In Claim Two, relying on *Atkins*, Applicant contends that he "is intellectually disabled and ineligible for execution under the Eighth and Fourteenth Amendment[s] of the U.S. Constitution." He notes that the Supreme Court decided both *Penry* (1989) and *Atkins* (2002) well after he filed his earlier writ application in 1987.

In the application's Conclusion, Applicant makes clear that Claim Two is an alternative allegation that he wishes to pursue only under certain circumstances:

> [Applicant] asks that this Court overturn his death sentence [because] the jury who sentenced him to death did not have an adequate vehicle through which it might assess the mitigating evidence of cognitive and psychiatric dysfunction presented during his trial and give [Applicant] the individualized sentencing determination that the Eighth Amendment demands. *In the event that this Court does not grant relief on Claim One based on the allegations in this petition and the strength of the record, but determines that further proceedings are*

*necessary, [Applicant] asks that this Court authorize Claims One and Two pursuant to Article 11.071 Section 5, remanding both for further evidentiary development, discovery, and findings of fact and conclusions of law.*

Appl.-02 at 37–38 (emphasis added).

As discussed below, we conclude that Applicant is entitled to habeas relief on his *Penry* claim and grant relief in the form of a remand to the trial court for a new punishment trial.  Because we grant relief on Applicant's *Penry* claim without requiring further factual development, we take Applicant at his word that he does not wish to pursue his *Atkins* claim under these circumstances. We conclude that he has waived his *Atkins* claim for purposes of this proceeding and dismiss it.

III.    APPLICANT'S *PENRY* CLAIM IS MERITORIOUS

A.    **Applicable Law**

In *Penry*, the Supreme Court determined that the defendant's death sentence offended the Eighth Amendment because the former punishment phase special issues submitted to his jury did not provide an adequate vehicle for meaningfully considering and giving effect to his double-edged evidence of intellectual disability and childhood abuse. *See* 492 U.S. at 319–25. Since delivering *Penry*, the Supreme Court has identified additional kinds of two-edged evidence that require a separate mitigation instruction allowing the jury to give that evidence

full consideration and effect. *See Tennard v. Dretke*, 542 U.S. 274, 288 (2004) (intellectual disability, low intelligence falling short of intellectual disability); *Smith v. Texas*, 543 U.S. 37, 44 (2004) (low intelligence, placement in special education classes); *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 239–42 (2007) (unhappy, disturbed childhood; childhood neglect and abandonment;  neurological damage); *Brewer v. Quarterman*, 550 U.S. 286, 296 (2007) (mental illness, including depression; substance abuse).

In the years following these Supreme Court decisions, this Court has also found that the special issues as they existed in the pre-*Penry* era were inadequate to allow a jury to consider and give effect to the types of mitigating evidence described above. *See Ex parte Hood*, 304 S.W.3d 397, 400 (Tex. Crim. App. 2010) (severe childhood injuries resulting in negative changes in behavior and permanent physical disabilities, speech defects, learning disabilities and cognitive impairments, low IQ, child abuse); *Ex parte Smith*, 309 S.W.3d 53, 61–62 (Tex. Crim. App. 2010) (poverty, crime-ridden neighborhood, drug abuse); *Ex parte Moreno*, 245 S.W.3d 419, 424–25 (Tex. Crim. App. 2008) (troubled or disruptive childhood); *Ex parte Martinez*, 233 S.W.3d 319, 320 (Tex. Crim. App. 2008) (psychiatric problems, alcohol abuse, and a troubled childhood).

**B.    Analysis**

*Penry* error occurred in this case. The mental and neurological health evidence that Applicant presented at his trial is the type of evidence that both the Supreme Court and this Court have come to regard as the kind of "two-edged" mitigating evidence calling for a separate, mitigation-focused jury instruction. *See Abdul-Kabir*, 550 U.S. at 239–42; *Brewer*, 550 U.S. at 296; *Hood*, 304 S.W.3d at 400; *Martinez*, 233 S.W.3d at 320.  Applicant's jury did not receive such an instruction.  And, whatever harm analysis rightly applies in this situation, we conclude that the absence of a *Penry*-compliant jury instruction at Applicant's trial was harmful.[2] Accordingly, Applicant's death sentence can longer stand.

IV.   CONCLUSION

For the reasons discussed above, we grant habeas relief on Applicant's *Penry* allegation (Claim One) and vacate his death sentence. Applicant is therefore remanded to the custody of Harris County for a new punishment proceeding.

---

[2] *Compare Ex parte Hathorn*, 296 S.W.3d 570, 572 (Tex. Crim. App. 2009)("We acknowledge that normally, an egregious harm standard is proper in analyzing an un-objected-to charge error. However, rather than characterize this as a jury charge error, we interpret the Supreme Court cases related to this particular issue to have broader due process implications."), *with Olivas v. State*, 202 S.W.3d 137, 145 (Tex. Crim. App. 2006) ("The appropriate standard for all errors in the jury charge, statutory or constitutional, is that set out in *Almanza*.") (some punctuation omitted) (referring to *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

Finding Applicant's intellectual disability allegation (Claim Two) waived for

purposes of this proceeding, we dismiss it.

Delivered:   April 9, 2026
Do Not Publish